**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **AMARIS PAGAN-NEGRON,** | ) | |
| **INDIVIDUALLY AND AS** | ) | |
| **NATURAL PARENT AND NEXT** | ) | |
| **FRIEND OF C.M.P., A MINOR,** | ) | |
| | ) | **Civil Action No.  SA-12-CV-055-XR** |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **SEGUIN INDEPENDENT** | ) | |
| **SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | | |

**ORDER**

On this day the Court considered Defendant's Motion for Summary Judgment (Docket No. 26), Plaintiffs' Response (Docket No. 29), and Defendant's Reply (Docket No. 31).  For the reasons stated below, Defendant's motion is GRANTED.

**I.      Background**

**A.      Factual Background**

C.M.P. is a former student of Seguin Independent School District ("SISD") who was served through special education pursuant to the Individuals with Disabilities Education Act ("IDEA") from 2006 until he withdrew from the school district in January 2012.  C.M.P. began kindergarten at Koennecke Elementary in 2006, at which time he was evaluated for special education services and determined eligible as a student with a speech impairment.  *See* Defendant's motion for summary judgment, Ex. C at 15.  Pursuant to the IDEA, SISD convened an Admission, Review, Dismissal ("ARD") Committee which consisted of C.M.P.'s mother,

Plaintiff Amaris Pagan-Negron, and other individuals knowledgeable about C.M.P.'s disability and educational needs. *See id.* at 16–20. Pagan-Negron frequently attended the ARD meetings. *See generally* Ex. D to Defendant's MSJ. The Committee met at least annually to develop, review, and revise C.M.P.'s Individual Education Program ("IEP"). *See generally* Ex. C to Defendant's MSJ.

During C.M.P.'s second grade year, 2008-2009, he began having some behavioral problems in class, including tantrums "when he was [not] a leader, . . . [did not] make 100s [on tests] or make his goal." *Id.* at 26. These behaviors were discussed during his annual ARD meeting held in March 2009, with staff noting that C.M.P. needed a lot of redirection from teachers, behavior support staff, and the principal. *See id.* Pagan-Negron indicated that she had scheduled a neuropsychological exam for her son and the ARD Committee put selected modifications in place for C.M.P. to address his needs. *See id.* During this time period, C.M.P. began seeing a behavior therapist for anger management. *See id.* at 28.

The ARD Committee met in December 2009, during C.M.P.'s third grade year, for his annual ARD meeting and to review recently completed evaluation results. *See* Ex. C to Defendant's MSJ at 34. C.M.P. did not have the scheduled neuropsychological exam mentioned by Pagan-Negron during the last ARD meeting on March 2009. *See id.* The Committee discussed his behaviors, including "meltdowns" when he did not make the grade he wanted, and also discussed the accommodations and strategies they had used to evaluate progress on his behavior. *See id.* at 30–35.

A disciplinary incident that occurred on January 14, 2010 is the underlying cause of this lawsuit. According to C.M.P.'s third-grade teacher Lisa Shelton, C.M.P.'s behavior that day was "significantly disruptive." Ex. J to Defendant's MSJ at 2. She "tried multiple times to re-direct

him, but [her] efforts were unsuccessful." *Id*. Shelton alleges that C.M.P. "began flinging his personal belongings and hitting other students" and she ultimately called the Principal, Yomeida Guerra, to remove C.M.P. from her classroom. *Id*.

According to Principal Guerra, she removed C.M.P. from class and warned him that his behavior could result in removal to the alternative school. *See* Ex. H at 54. However, Plaintiffs contend that Principal Guerra "publicly humiliated [C.M.P.] in front of his peers and teacher" by bringing C.M.P. in front of the class and asking "for a show of hands by students that were tired of C.M.P. and his behavior." Plaintiffs' Second Amended Complaint ¶ 4. Principal Guerra and Ms. Shelton both deny that such an incident occurred. *See* Ex. J to Defendant's MSJ at 2; *see also* Ex. H to Defendant's MSJ at 57.

Due to changes in the school district boundaries, C.M.P. attended Vogel Elementary for his fourth and fifth grade years. During the summer of 2010, prior to C.M.P.'s fourth grade year, C.M.P.'s private physician referred C.M.P. for a psychological evaluation due to suspected Asperger's disorder. *See* Ex. C at 36–45. The evaluator noted that C.M.P. was a "good student academically but has exhibited significant behavior problems," including having "meltdowns" at school and home. *Id*. at 37. The evaluator interviewed C.M.P. about his school experience, and C.M.P. did not mention the January incident or any incident of "public humiliation" at school. *See id*. The evaluator determined that C.M.P. "appear[ed] to meet [the] criteria for a diagnosis of Asperger's Disorder." *Id*. at 45.

C.M.P.'s annual ARD meeting for fourth grade was held in December 2010, at which time Pagan-Negron presented the evaluation. *See* Ex. C at 46–50. The ARD Committee reviewed the outside information provided by Pagan-Negron and revised C.M.P.'s IEP accordingly by adding the eligibility category of "Autism" and implemented additional services

as appropriate.  *See id*.  C.M.P. had been working with a behavior specialist at SISD and had made improvements in his behavior.  *Id*. at 49.  There does not appear to have been any significant disciplinary issues at school during C.M.P.'s fourth grade year.

During the beginning of C.M.P.'s fifth grade year, the 2011-2012 school year, he began exhibiting more behavioral problems.  *See* Ex. C at 56.  The ARD Committee met in mid-September 2011 to discuss C.M.P.'s behavior and develop a Behavior Intervention Plan ("BIP").  *See id*.  It appears that C.M.P. had a violent episode with suicidal ideation at home towards the end of September and was hospitalized for one week.  *See id*. at 57–60.  Following C.M.P.'s discharge and return to school, SISD staff collaborated with C.M.P.'s outside medical and mental health providers to discuss his needs, including possible revisions to his special education eligibility category, services, and placement.  *See id*. at 62-64.  The ARD Committee met in early November to discuss C.M.P.'s program, additional assessments needed, and additional services to provide.  *See id*. at 65–71.  Pagan-Negron engaged Loretta Zayas-Revai, a lay advocate, who requested C.M.P.'s educational records and attended the ARD meeting.  *See id*.  C.M.P.'s physician, Dr. Tomasovich, raised various concerns with C.M.P.'s educational program and requested that the ARD Committee place C.M.P. on Homebound due to his fragile state.  *See id*. at 70-71.  The ARD Committee began providing Homebound Services to C.M.P. thereafter.

In the weeks following the November 2011 ARD meeting, the advocates and Pagan-Negron informed SISD for the first time that they believed C.M.P. had been verbally abused by Principal Guerra on January 14, 2010.  At the advocates' suggestion, Pagan-Negron filed a complaint of child abuse with Child Protective Services ("CPS").  *See* Ex. E-2 at 22.  According to the Plaintiffs, CPS informed them that the case had to be dismissed because "too much time had passed between the time of the incident and the investigation" and because C.M.P. "was no

longer under the authority of Yomeida Guerra . . . so she was no longer a threat to his well[-]being." *See id.* On December 5, 2011, Pagan-Negron filed a Request for Special Education Due Process Hearing with the Texas Education Agency on behalf of C.M.P. *See* Ex. A-1. The parties participated in the IDEA's mandatory resolution process and entered into a binding and voluntary Settlement Agreement on February 14, 2012. *See* Ex. A-4.

### B.    Procedural Background

On January 17, 2012, Plaintiffs filed their Original Complaint in this Court against SISD. The Second Amended Complaint filed on April 19, 2013[1] is the live pleading. C.M.P.'s claims revolve around the incident that allegedly occurred on January 14, 2010. *See* Plaintiffs' Second Amended Complaint ¶4.[2] Plaintiffs allege that this incident created a hostile educational environment in violation of C.M.P.'s rights under section 504 of the Rehabilitation Act ("section 504") and the Americans with Disabilities Act ("ADA"), as well as a violation of his right to substantive due process under the Fourteenth Amendment of the United States Constitution. *See id.* at ¶ 5–6.

Amaris Pagan-Negron, who travels with the aid of a wheelchair, also brings a claim against SISD under the ADA. *See* Plaintiffs' Second Amended Complaint ¶7. She alleges that she had "significant difficulty accessing and/or otherwise using many of SISD's facilities" due to SISD's failure to comply with the ADA. *Id.*

---

[1] Plaintiffs' Original Complaint lists the following Defendants: (1) Seguin ISD, (2) Dr. Irene Garza, Superintendent of Seguin ISD, in her official capacity, (3) Mr. Louis Q. Reyes, III, Seguin ISD School Board President, in his official capacity, and (4) Ms. Yomeida Guerra, Seguin ISD—Koennecke Elementary School Principal, in her official capacity. Orig. Compl. at ¶¶ 13-16. However, the First Amended Complaint and Second Amended Complaint do not list Dr. Garza, Mr. Reyes, or Ms. Guerra as defendants. Accordingly, all claims against Dr. Garza, Mr. Reyes, and Ms. Guerra are dismissed.

[2] The only substantive difference between the First Amended Complaint and Second Amended Complaint appears to be the alleged date of the disciplinary incident in one paragraph. Both parties agree that the incident occurred on January 14, 2010. Because the Second Amended Complaint is the live pleading, the Court will refer to the Second Amended Complaint herein simply as the "Complaint."

## II.        Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the court concludes that no reasonable trier of fact could find for the nonmovant, there is no genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine dispute of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Furthermore, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## III.      Analysis

SISD alleges that Pagan-Negron's claims on behalf of her minor child, C.M.P., are "primarily educational in nature" and therefore pertain to violations of the IDEA. SISD asserts that if the claims arise out of the IDEA, they are released by the Settlement Agreement, or

alternatively, procedurally barred for failure to exhaust administrative remedies.  Def's. Br. at 9.

SISD contends that Pagan-Negron only reserved her right to file claims on behalf of C.M.P. for

intentional disability-based discrimination under the ADA, Section 504 and the Fourteenth

Amendment.  *Id.* at 10-11.

> **A.     Settlement Agreement**

The relevant language of the Settlement Agreement provides:

> PETITIONERS hereby RELEASE, ACQUIT AND FOREVER
> DISCHARGE SISD, its past, present, and future agents, employees,
> representatives, attorneys, insurers, and Trustees, of and from any and all
> claims, demands, damages, causes of action, liabilities or controversies of
> any kind whatsoever, whether known or unknown, now existing or that
> might arise hereafter, which arise out of, or in any manner pertain to
> claims based upon violations of the Individuals with Disabilities
> Education Act (IDEA), Chapter 19 of the Texas Administrative Code,
> Sections 89.001 *et seq.*, Section 504 of the Rehabilitation Act of 1973, or
> the Family Educational Rights and Privacy Act.

> PETITIONERS specifically reserve their right to file claims against
> RESPONDENT based on claims which have arisen or may arise under 42
> U.S.C. Section 1983 for alleged violations of any provision of the United
> States Constitution or the Americans with Disabilities Act, 42 U.S.C. §§
> 12101 to 12213.  All claims based on Section 504 of the Rehabilitation
> Act or the Individuals with Disabilities Education Act are released in so
> far as those claims relate to the provision of a FAPE (free appropriate
> public education) or the identification, placement, or educational services
> provided to the Student.  The parents specifically reserve their right to
> pursue claims against the District related to an alleged incident involving a
> District principal, Yomeida Guerra, which allegedly resulted in injury to
> the Student and causes of action related to alleged lack of access by the
> Student's mother to certain areas of the District's premises.  Any causes of
> action under Section 504 of the Rehabilitation Act required to pursue such
> claims are expressly reserved by the parents.

Doc. 26-21 at 4.

> **B.     Plaintiff's claims are not barred by the Settlement Agreement**

Pagan-Negron's claims do not seek relief under the IDEA.  Pagan-Negron alleges that SISD violated Section 504, the ADA, and Section 1983 by "failing to provide C.M.P. with a safe, non-hostile educational environment."  Compl. at 2.  Plaintiff is not claiming that C.M.P. was deprived of appropriate educational resources.  Plaintiff is alleging that C.M.P. was verbally assaulted and as a result alleged violations of the ADA, Section 504 and Section 1983 occurred.

Nor is Plaintiff circumventing the IDEA by repackaging claims under some other statute. *See Marc V. v. N. E. Indep. Sch. Dist*., 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006).  The IDEA should not be construed so broadly that any injury a disabled student suffers in school is automatically subject to the IDEA.  *Tristan v. Socorro Indep. Sch. Dist.*, 902 F. Supp. 2d 870, 879 (W.D. Tex. 2012) (recognizing that the Fifth Circuit "rejected the notion that the IDEA encompasses all torts occurring in the special education classroom" in *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999)).  Pagan-Negron does not allege deprivation of certain educational services, nor does she seek remedies that are educational in nature or available under the IDEA. Pagan-Negron does not challenge C.M.P.'s placement or related educational services; instead she seeks only tort-like damages in the form of physical pain, mental anguish, medical expenses, and mental health expenses, which are claims for relief not available under the IDEA.

Additionally, in the Settlement Agreement, Pagan-Negron expressly reserved her right to bring causes of action related to the alleged incident involving Principal Guerra.  Accordingly, Plaintiffs' ADA, Section 1983, and Section 504 claims for intentional disability-based discrimination based on Principal Guerra's alleged misconduct are not released in the Settlement Agreement.

### C.    Failure to Exhaust Administrative Remedies

If a civil action arises under the IDEA, a plaintiff must first exhaust state administrative remedies made available under the IDEA before bringing an action in federal court. *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). As stated above, Plaintiffs have not asserted an IDEA claim in their complaint. Accordingly, Defendant's motion for summary judgment is denied on this issue as well.

### D.      C.M.P.'s Section 504 and ADA Claims

SISD also seeks summary judgment on C.M.P.'s claims under section 504 of the Rehabilitation Act ("section 504") and Title II of the Americans with Disabilities Act. Plaintiffs allege that SISD violated section 504 and the ADA by failing to provide C.M.P. with a "safe, non-hostile educational environment." Compl. ¶ 5. Plaintiffs also allege that SISD discriminated against C.M.P. on the basis of his disability because it failed to "understand . . . whether or not [C.M.P.'s behavior] was related to his disability or unaddressed concerns his mother previously communicated to the school." *Id*. ¶ 4.

The Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because the terms of Title II of the ADA and section 504 of the Rehabilitation Act are so similar, this Court evaluates Ms. Pagan-Negron's claims under the statutes together and applies "jurisprudence interpreting either section" to both. *See Hainze v. Richards*, 207 F.3d

785, 799 (5th Cir. 2000);   *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (evaluating the plaintiff's claims under section 504 and the ADA together because the Fifth Circuit "equated liability standards" under the two statutes).   SISD does not dispute that it is covered under the ADA and section 504 of the Rehabilitation Act.   Additionally, neither party contests that C.M.P. is a qualified individual within the meaning of the ADA.

To recover compensatory damages under the ADA or section 504, a plaintiff must demonstrate intentional discrimination.   *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002).   To demonstrate disability discrimination in an educational context, "something more than a mere failure to provide a fair, appropriate public education under the IDEA must be shown."   *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).   The ADA and section 504 "do not create a general tort liability for educational malpractice."   *D.A.*, 629 F.3d at 454.

In *D.A. v. Houston Independent School District*, the Fifth Circuit affirmed judgment as a matter of law on a parent's section 504 and ADA claims on behalf of a minor child, finding that the parent did not provide evidence sufficient to create a genuine dispute of material fact regarding the school district's intentional discrimination.   *Id.* at 455.   The "gravamen of [the parent's] disagreement" was the school district's failure to diagnose the student's disability.   *Id.* The court noted in *dicta* that the student "cannot be discriminated against because of his disability until it has been demonstrated to exist."   *Id.*

SISD asserts that Principal Guerra "did not treat C.M.P. differently than she would have treated any other student under the same circumstances" and contends that Ms. Pagan-Negron has presented no evidence that Principal Guerra disciplined C.M.P. for misbehaving because of his disability, which was identified as speech impairment at the time.  Doc. 26 at 18.  The record

shows that at the time of Principal Guerra's alleged disciplinary misconduct, C.M.P. did not have a known disability related to his behavioral problems and was not diagnosed with such a disability until almost eight months after the incident.  Specifically, evidence shows that SISD identified C.M.P. as speech impaired as early as December 20, 2006.  Doc. 26-6 at 15.  Principal Guerra's alleged disciplinary misconduct occurred on January 14, 2010,  Ex. J. at 2, and C.M.P. was not diagnosed with Asperger's until August 3, 2010,[3]  Doc. 26-6 at 36, 45.  Like the parent in *D.A.*, Ms. Pagan-Negron asserts that SISD failed to diagnose C.M.P.'s disability related to his classroom behavior.  And like the parent in *D.A.*, Ms. Pagan-Negron cannot demonstrate that SISD intended to discriminate against C.M.P. on the basis of his behavior-related disability before his behavior-related disability was known to exist.[4]

Plaintiffs also argue that Principal Guerra "exhibited a pattern of discriminatory behavior toward a specific class of students . . . that went unchecked" by SISD.  Pls.' Resp. at 7. As a result, Plaintiffs urge that SISD's failure to act "creates a reasonable inference that it exhibited deliberate indifference toward the rights of C.M.P." *Id.* Similarly, Plaintiffs argue that SISD's "failure to set proper policy for training staff responsible for educating and supervising students with disabilities could further show deliberate indifference given the prior notice of [Principal Guerra's] actions toward [C.M.P.] and other similarly situated students." *Id.* at 8. However,

---

[3]  The record demonstrates that at a March 5, 2009 ARD meeting, Ms. Pagan-Negron "mentioned she had a neurological evaluation scheduled" for C.M.P. for April of 2009.  Doc. 26-6 at 34; *see* Doc. 26-6 at 26. The record from the next ARD meeting on December 4, 2009 states that the neurological evaluation that had been scheduled for April 2009 "was not brought up" but that Ms. Pagan-Negron "sa[id] she plan[ned] on" taking C.M.P. to a neuro-psychological evaluation.  Doc. No. 26-6 at 34. As of the ARD meeting on December 4, 2009, C.M.P.'s ARD committee considered his disability as only a speech impairment.  *See* Doc. 26-6 at 31.  C.M.P. received a psychological evaluation on August 3, 2010, diagnosing him with Asperger's Disorder. *See id.* at 36, 45.
[4]  Ms. Pagan-Negron does not allege or provide any evidence that Seguin ISD or Principal Guerra discriminated against C.M.P. because of his speech impairment.  Rather, the essence of Ms. Pagan-Negron's argument is that Seguin ISD failed to "understand" C.M.P.'s behavioral problems and provide him with a "safe, non-hostile" environment despite his behavior.

Plaintiffs' arguments fail because Plaintiffs have not pointed to any evidence demonstrating that Principal Guerra exhibited a pattern of discriminatory behavior towards C.M.P. or anyone else or that SISD had notice of the discriminatory behavior.

Accordingly, summary judgment is proper on Ms. Pagan-Negron's section 504 and ADA claims brought on behalf of minor C.M.P.

### E.      C.M.P.'s Section 1983 Claim

SISD seeks summary judgment on Ms. Pagan-Negron's section 1983 claim.  Ms. Pagan-Negron alleges that SISD deprived C.M.P. of the right to life, liberty, and bodily integrity under the Fourteenth Amendment and seeks compensatory money damages.  Compl. ¶ 25.  Ms. Pagan-Negron alleges that SISD's policies failed to protect C.M.P. "from a known and inherent dangerous situation" and that SISD failed to assure its staff were correctly trained and supervised to protect C.M.P. from such a situation.  Compl. ¶ 28-30.  She asserts that Principal Guerra and SISD "engaged in a policy of intimidation and threats to try and correct C.M.P.'s classroom behavior rather than discern the cause of . . . [C.M.P.'s] outbursts."  Pl.s' Resp. 10.  Ms. Pagan-Negron alleges that this "policy of intimidation caused C.M.P. to be humiliated and embarrassed." *Id.*

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

### 1.   Right Secured by the Constitution

SISD alleges that Principal Guerra's alleged disciplinary actions "do[] not rise to the level of a constitutional violation of C.M.P.'s substantive due process rights."  Doc. 31 at 7.  Ms.

Pagan-Negron alleges that SISD deprived C.M.P. of rights to life, liberty, and bodily integrity under the Fourteenth Amendment.  Ms. Pagan-Negron asserts that SISD's failures to protect C.M.P. "from a known and inherent dangerous situation" and to inadequately train and supervise its staff "rise to the level of deliberate indifference, constituting a violation of the Fourteenth Amendment." Compl. ¶ 31.

To advance a deliberate indifference theory of constitutional violation, the "arbitrary government action must 'shock the conscience.'"  *Collin v. City of Harker Heights*, 503 U.S. 115, 126 (1992).  The Fifth Circuit recently recognized:

> Conduct sufficient to shock the conscience for substantive due process has been described as . . . conduct that violates the decencies of civilized conduct; conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency; conduct that interferes with rights implicit in the concept or ordered liberty; and conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

*Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (internal quotation marks omitted).  The Fifth Circuit further noted that conduct that shocks the conscience "typically involve[s] extreme force by police officers and other state actors."  *Id*. at 867-68 (collecting cases).  In an educational context, the Fifth Circuit determined that a teacher's conduct shocked the conscience when the teacher "fabricat[ed] sexual abuse against a student's father."  *Morris*, 181 F.3d at 669 (finding the conduct "abusive, irrational, malicious, and an oppressive use of governmental power").  But when a school released a student to an unauthorized person who sexually abused her, the Fifth Circuit determined that the school's actions did not rise to the level of shocking the conscience.  *Doe*, 675 F.3d at 869.  Finally, "punishment does not implicate substantive due process concerns unless the action is arbitrary, capricious, or wholly unrelated to

the legitimate state goal of maintaining an atmosphere conducive to learning." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1081 (5th Cir. 1995).

Here, Principal Guerra's alleged misconduct, even if true, was not "wholly unrelated" to maintaining an atmosphere conducive to learning. When viewing the evidence in the light most favorable to Ms. Pagan-Negron, evidence shows that Principal Guerra responded to a teacher's complaint that C.M.P. was not properly behaving in the classroom and took action to stop the behavior. Although Principal Guerra's alleged actions, if done, may not have been the most appropriate, they were not so "irrational" and "abusive" as to rise to the level of a constitutional violation. *See Hassan*, 55 F.3d at 1081-82.

### 2.   Color of State Law

To support a claim based on an official custom or policy of a municipality, a plaintiff must demonstrate that (1) a policy existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). A government entity cannot be held liable for the actions of its employees unless the plaintiff establishes a policy or custom that led to the unconstitutional acts. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 417 (1997).

The description of the policy or custom and its relationship to the underlying constitutional violation must be more than conclusory. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). The policy or custom must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694. Such a policy may include "inadequate training [or] supervision . . . where the need for such is so obvious, and the violation of

-14-

constitutional rights so likely to result from . . . that the failure . . . demonstrates a 'deliberate indifference' to individuals' constitutional rights." *Graniczny v. City of El Paso*, No. 10-CV-156, 2011 U.S. Dist. LEXIS 98182, at *8 (W.D. Tex. Mar. 11, 2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989)).  The custom does not have to be formally implemented by the decision-making body.  *Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir. 1983) (citing *Monell*, 436 U.S. at 690-91).  Where the liability is based on informal custom, the practice must be "so widespread as to have the force of law."  *Bd. of Cnty. Comm'rs*, 520 U.S. at 404.  Allegations of an isolated incident are not sufficient.  *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984).  The plaintiff must demonstrate a "pattern of abuses, consisting of prior incidents both sufficiently numerous and sufficiently similar and specific to the one resulting in plaintiff's injuries."  *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

SISD alleges that Ms. Pagan-Negron cannot establish that C.M.P.'s alleged injuries were caused by a SISD policy or custom.  Doc. 26 at 23.  Ms. Pagan-Negron alleges that SISD "engaged in a policy of intimidation and threats to try and correct C.M.P.'s classroom behavior rather than discern the cause of his outbursts."  She asserts that Principal Guerra threatened to send C.M.P. to alternative school "several times" and told him that "students who were sent to alternative school might go to jail."  Doc. 29 at 10.  C.M.P. stated that Principal Guerra talked to him about alternative school "quite a bit" and told him that people who went to alternative school might go to jail "[p]robably only once or twice."  This Court concludes that Ms. Pagan-Negron's assertions, even if supported by evidence, do not demonstrate that SISD had a policy or custom of "intimidation."

Ms. Pagan-Negron also alleges that SISD did not adequately train or supervise its employees.  However this allegation is insufficient to survive summary judgment because it is

-15-

conclusory.  Ms. Pagan-Negron does not allege any facts or provide any evidence related to SISD's training or supervisory practices, nor does she establish that the need for additional training or supervision was obvious.  Accordingly, summary judgment on Ms. Pagan-Negrons section 1983 claim is proper.

### F.    Ms. Pagan-Negron's ADA Claim

Ms. Pagan-Negron, in her individual capacity, also sued SISD for violation of the ADA. She alleges she "had significant difficulty accessing and/or otherwise using many of SISD's facilities due to SISD's failure to comply with" the ADA.  Compl. ¶ 7.  Ms. Pagan-Negron concedes that she does not seek injunctive relief.  Doc. 29 at 10.  Rather, she seeks compensatory damages, declaratory judgment, and attorney's fees.  Compl. at 9-10.

SISD asserts that Ms. Pagan-Negron's ADA claim is time-barred by the statute of limitations.  Def.'s Br. at 25.  Neither party contests that the Texas two-year personal-injury limitations period applies.  *See* Tex. Civ. Prac. & Rem. Code § 16.003; *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (en banc) (applying the two-year Texas personal-injury limitations period for claims under section 504 of the Rehabilitation Act and Title II of the ADA).  Though state law provides the limitations period, the accrual date of a federal cause of action is an issue of federal law.  *Frame*, 657 F.3d at 238.

SISD correctly alleges that Ms. Pagan-Negron filed her action on January 17, 2012, and therefore any claims arising before January 17, 2010, must be dismissed.  Def.'s Br. at 25.  SISD further alleges that when counsel asked Ms. Pagan-Negron to identify the exact dates when she was unable to access a district facility in her deposition, she identified events occurring in 2006 and 2008, both outside of the limitations period.  *Id*. at 25-26.  Ms. Pagan-Negron contends that her accessibility claims are "ongoing and continuous" and did not end until she stopped using

-16-

district facilities in January 2012, when her children stopped attending district schools.  Doc. 29 at 10-11.

A continuous and ongoing violation tolls the statute of limitations period; statutes of limitations are meant to prevent "stale claims," and if the violation is a continuing one "the staleness concern disappears." *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 855 (5th Cir. 1993). (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).  There are two types of cases in which the continuing violation theory can toll the statute of limitations: (1) where the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time barred; and (2) where an initial violation, outside the statute of limitations, is repeated later.  *Hendrix v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990). Courts, including the Fifth Circuit, distinguish between a continuing violation and a single violation with a continuing impact.  *See United Air Lines v. Evans*, 431 U.S. 553, 558 (1977); *McGregor,* 3 F.3d at 867 (recognizing "[a] plaintiff cannot use the continuing violation theory to resurrect claims about discrimination . . . concluded in the past, even though its effects persist"). The Fifth Circuit determined that "the key to this inquiry is whether the original discriminatory act had the degree of permanence that should trigger [a person's] awareness of and duty to assert his or her rights." *Hendrix*, 911 F.2d at 1104 (internal quotation marks omitted).

Although at one point Ms. Pagan-Negron alleges SISD's violations were "ongoing and continuous," she does not provide evidence of any violations that occurred within the two-year statutory period to support her assertion.  Additionally, Ms. Pagan-Negron does not allege or provide any evidence that the initial violations she identified in her deposition were repeated later in the sense that she later attempted to access the same facilities and suffered the same difficulties.  She responds to SISD's argument simply by asserting that the facilities she

-17-

identified in her deposition were a "snapshot and/or outline" of the violations, alluding that additional violations occurred within the limitations period but failing to identify or provide any evidence of such violations to the Court. Because Ms. Pagan-Negron has provided no evidence of a violation that she first became aware of within the limitations period, and because she has not provided evidence that any violation that occurred outside of the limitations period was repeated, Ms. Pagan-Negron's ADA claim is time-barred and summary judgment is proper.[5]

## IV.        Conclusion

In light of the foregoing, Defendant SISD's motion for summary judgment is GRANTED. (Doc. No. 26). The Clerk is directed to enter judgment that Plaintiffs take nothing on their claims and to close this case.

Defendants are awarded their costs of court and should Defendants wish to pursue such costs, they must file a Bill of Costs within fourteen days of the entry of judgment pursuant to Local Rule CV-54.

SIGNED this 24th day of September, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[5] Seguin ISD also asserts that Ms. Pagan-Negron lacks Article III standing to bring her ADA claim. SISD's argument is rejected. Plaintiff alleges that she personally was injured when she attempted to access SISD facilities, that the injury was caused by SISD, and she seeks redress for the alleged injuries.